Howard S. SPERING, Appellant,

v.

TEXAS BUTADIENE & CHEMICAL
CORPORATION, a dissolved Del-
aware corporation.

No. 18358.

United States Court of Appeals,
Third Circuit.

Argued May 18, 1970.

Decided Oct. 21, 1970.

As amended Nov. 13, 1970.

Arthur J. Sullivan, Morris, James,
Hitchens & Williams, Wilmington, Del.,
for appellant.

E. Norman Veasey, Richards, Layton
& Finger, Wilmington, Del., for appellee
(David T. Dana, III, Wilmington, Del.,
on the brief).

Before ALDISERT and ADAMS, Cir-
cuit Judges and HIGGINBOTHAM, Dis-
trict Judge.

## OPINION OF THE COURT

HIGGINBOTHAM, District Judge.

We are asked to decide whether the
District Court abused its discretion in
dismissing plaintiff-appellant's case with
prejudice under a Local Rule which pro-
vides for dismissal of cases in which,
without good reason, no action has been
taken for a period of one year.[1] We
conclude that the District Court did not
abuse its discretion. We do so fully
mindful that appellant's claim might ulti-
mately have had some substantial merit.

---

1. Civil Rule 12 of the United States Dis-
trict Court for the District of Delaware
provides:

"Subject to the provisions of Rule 23
(c), FRCivP, in each cause pending,
wherein no action has been taken for a
period of one year, the Court may, on
its own motion or upon application of
any party and after reasonable notice,
enter an order dismissing such cause
unless good reason for the inaction is
given. An application for continuance
shall not be deemed to be action pre-
cluding such dismissal. After any such
application for dismissal has been filed,
no application for a continuance or any
proceeding taken under the discovery
rules, FRCivP, shall be deemed to toll
the application of this Rule."

## I. *History of the Case in Court.*

Plaintiff-Appellant Howard Spering's three-count complaint was filed on June 25, 1965. In twenty paragraphs appellant detailed a series of legal actions undertaken on behalf of defendant-appellee Texas Butadiene & Chemical Corporation (hereinafter "TB&C") from 1954 through 1964 and for which he was allegedly not fully compensated. Invoking breach of contract, unjust enrichment, and quantum meruit theories of recovery, appellant asked for judgment in the amount of $901,322.83, plus interest, costs, and counsel fees.

TB&C filed its amended answer on January 17, 1966. In addition to ten affirmative defenses, the amended answer avers that "defendant has paid plaintiff in full for all services rendered * * * with the exception of services rendered after February 25, 1964, with respect to which defendant has paid $6,000.00 on account, but as to which plaintiff has not yet submitted a final statement."

TB&C filed twenty-one interrogatories to plaintiff on December 14, 1965. Plaintiff objected to interrogatories 2, 4, and 6 through 21. On July 29, 1966 Chief Judge Wright overruled plaintiff's objections subject to a limitation, and plaintiff filed his answers on October 2, 1966.

The remainder of 1966 saw no further record action taken in the lawsuit. Nor was any record action taken in all of 1967. It was only on February 1, 1968 —one year and four months less a day after plaintiff last acted in the lawsuit— that Spering filed four interrogatories to TB&C. No official notice was made of this first delay in excess of one year. TB&C completed its answers to plaintiff's interrogatories on May 21, 1968.

On August 2, 1968 Civil Action No. 3047, Howard Spering v. Texas Butadiene & Chemical Corporation was more than three years old. Accordingly, pursuant to Local Rule 3 of the District Court for the District of Delaware, plaintiff was asked on that day to file with the Clerk of the Court "a statement in sufficient detail explaining why the case has not proceeded more expeditiously."[2]

In a response dated September 3, 1968 counsel could "only suggest that the plaintiff himself is an attorney actively engaged in the practice of law in Washington, D. C., the period of time during which the claim asserted by the plaintiff arose extends over a period of years, and a great number of documents, memoranda and correspondence had to be reviewed from time to time as the case proceeded." By way of conclusion, plaintiff's attorney stated: "Plaintiff intends to proceed at this point more

2. The full text of Local Rule 3 of the United States District Court for the District of Delaware is as follows:

"*Rule 3. Calls of Calendar; Dismissal for Failure to Prosecute; Three-year Cases.*

"There shall be a calendar call at the beginning of each term. The calendar shall consist of all cases in which, as of July 1 of the year in which the calendar is called, no action has been taken by the parties or their counsel for a period of one year (one-year cases), and of all cases which, as of July 1, have been pending for a period of three years (three-year cases).

"On or before the 20th day of August, the Clerk shall send a copy of the calendar and notice of this Rule to all counsel whose names appear in said calendar, or if no counsel appear, to the parties at their last known address. Such mailing shall be deemed good and sufficient notice of the provisions below.

"Subject to the provisions of Rule 23, F.R.C.P., counsel or the parties, in the one-year cases, shall appear at the call of the calendar and show cause, if any they have, why the case should not be dismissed. If counsel or the parties fail to appear or show why the case should not be dismissed, an order of dismissal shall be entered by the Court.

"Counsel or the parties in the three-year cases shall, before the first Tuesday in September, file with the Clerk in duplicate a statement in sufficient detail explaining why the case has not proceeded more expeditiously.

"Thereafter the Court may take such action if any, as appears warranted."

expeditiously in preparation for the trial of this case." Defendant's letter to the Clerk of the Court stated defendant's position that "it is incumbent upon plaintiff to move the case along promptly or dismiss it." The District Court took no action at that time.

Another eleven months passed without a single record action in the case. More than a year and a half had passed since plaintiff had filed four interrogatories on February 1, 1968, and with the exception of these four questions answered in May of that year, no record action had been taken by plaintiff to advance his case in thirty-four months. As in 1968 also in 1969, the Clerk of the Court, pursuant to Local Rule 3,[3] called upon plaintiff to explain why his case had not proceeded more expeditiously. Pending for three years, plaintiff's case was now also one in which no action had been taken for a period of one year (for the second time). Plaintiff had therefore to show cause why the case should not be dismissed.

On August 6, 1969 defendant moved to dismiss plaintiff's case, basing its motion in part on Local Rule 12.[4] In a letter to the Clerk of the Court, with copies to Chief Judge Wright, Judge Steel, and counsel for Spering, defendant stated its intention to "bring its motion to dismiss to the attention of the Court at the Call of the Calendar" scheduled for September 16, 1969.

Plaintiff Howard Spering, himself a lawyer, was not unaware of the dangerous drift that had set in for some time in the prosecution of his case. In a letter to his attorney dated March 26, 1969 Spering noted that "months have gone by without our moving forward in our case against Texas Butadiene & Chemical Corporation." "I fear," he continued, "that so much time has gone by without action on our part that we have probably already prejudiced our negotiative position in the case, if not also our position before the court." [Letter attached to affidavit filed October 15, 1969, Docket Entry No. 45.]

At the Call of the Calendar on September 16, 1969 the following exchange took place between Judge Steel and the attorney for plaintiff Spering:

"The Court: This case was begun in June of 1965. That is four years ago. The last action was taken on May 21, 1968."

"Plaintiff's attorney: Yes."

"The Court: Now, I read the letter of explanation for this delay. One reason given was extensive research relating to legal defenses. Now these defenses were raised in an amended answer filed in January of 1966, more than three years ago. Now the defenses can't have been so complex that for three years they required extensive research."

"Plaintiff's attorney: No, sir, but the answers to interrogatories that Defendant made in May of 1968 set forth information relating to those defenses."

"The Court: Well, why weren't the interrogatories filed before that? Here was an answer which told you what you were going to have to meet in January of 1966 and you waited until some time in 1968 to find out the facts you needed. I think it is inexcusable. I think there is no justifiable cause shown for the delay, and under the one-year rule I shall dismiss the action and I shall grant the motion to dismiss." [Notes of Testimony, Call of Calendar, Docket Entry No. 50, p. 3.]

On September 16, 1969, Judge Steel ordered Spering's action dismissed with prejudice. Plaintiff moved for reargument, and plaintiff and counsel for the defendant filed affidavits with the Court. On October 16, 1969 Chief Judge Wright heard reargument, which he considered as argument on a motion to vacate Judge Steel's order of dismissal. The Chief Judge stated that he con-

---

3. See text of Rule above, p. 678.

4. See text of Rule above, p. 677.

sidered it his duty "to examine the record and consider what Judge Steel did, and if I find anything in there that I would think was an abuse of discretion by Judge Steel * * * do something about it. Absent that, the ruling will stand." Notes of Testimony, Reargument October 16, 1969 p. 2. At the conclusion of the reargument, having heard counsel for both plaintiff and defendant as well as the plaintiff himself and having examined the total record, Chief Judge Wright denied plaintiff's motion. The dismissal of Civil Action No. 3047 became final and this appeal followed.

II. *There has been no Abuse of Distion; the Order of Dismissal will be Affirmed.*

█ Dismissal of a lawsuit for inaction is clearly within the sound discretion of the federal district court. Link v. Wabash Railroad Company, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Absent a clear abuse of discretion by the district court, we will not reverse the court's order of dismissal. Kenney v. California Tanker Company, 381 F.2d 775 (CA3, 1967). In determining that there has been no such abuse of discretion in the instant case, we have carefully considered all of the circumstances and the entire record of the matter.

As our extensive recital of the history of the case has indicated plaintiff is himself a lawyer and as such not unaware of the importance of exercising rights timely. Just as the failure to comply with the statute of limitations might extinguish an otherwise valid right so are there perils from extended inaction in the conduct of a lawsuit. Indeed in plaintiff's letter to his attorney almost six months prior to the order of dismissal he expressed the "fear that so much time has gone by without action on our part that we have probably already prejudiced * * * our position before the court."

Appellant argues that "this is not * * * (his attorney's) lawsuit, it is Mr. Spering's lawsuit;" and that "any delay in the prosecution of the claim has not been Mr. Spering's responsibility, it has been Plaintiff's lawyer's responsibility." The effect of the dismissal, appellant concludes "is to invoke a severe and harsh penalty upon a plaintiff who himself has not been, if you will, guilty of any conduct that caused delay in the prosecution." [Notes of Testimony, Reargument pp. 8 and 9, Docket Entry No. 49.] To this contention the Supreme Court of the United States replied:

"There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" (Citation omitted) Link v. Wabash Railroad Company, 370 U.S. 626, at 633–634, 82 S.Ct. 1386, at 1390.

Where plaintiff is himself an attorney the Supreme Court's words are the more strongly applicable.

The validity of Local Rule 12 of the United States District Court for the District of Delaware is unchallenged here. The Rule provides that in a case where no action has been taken for a period of one year the Court may, after reasonable notice, dismiss such case unless good reason for the inaction is given. Appellant has been given full and fair opportunity to explain his inaction. At reargument before Chief Judge Wright appellant's attorney stated:

"it doesn't excuse the prosecution of the claim that some admitted amount is due and owing nor the neglect, if you will, in pursuing the claim."

* * *

In response to the Court's question, "did you make any effort to ever get (the documents involved in this dispute),"

appellant's attorney could only say: "No, sir." (p. 9)

\* \* \*

The Chief Judge stated that he could not understand how appellant's lawyer "could let a case ostensibly involving this much money simply lay in your office without any activity, especially after you had been warned a year ago that some action had to be taken, and when you promised the court that some action would be taken." Appellant's attorney could only reply: "Well I regret to say to Your Honor that I cannot give you a satisfactory explanation." (pp. 9, 10)

Two judges of the District Court considered appellant's arguments and did not find in them the "good reason for the inaction" required by Rule 12. We have passed over the same ground and more and are also satisfied that there has been no abuse of discretion. Reversal of the District Court's order of dismissal is unwarranted.

One last matter merits discussion. Appellant has relied heavily on Glo Company v. Murchison and Company, 397 F.2d 928 (CA3, 1968), cert. den. 393 U. S. 939, 89 S.Ct. 290, 21 L.Ed.2d 276 (1968). In its first opinion reversing an order of dismissal this court relied heavily on the fact that "there appears to be no dispute that an amount of money is owed to plaintiff under the contracts in suit." (397 F.2d at p. 929) In a later opinion on rehearing this court said: "after consideration of the complex factual circumstances of the case, we conclude with the greatest reluctance that in view of the unusual nature of the circumstances of this case the interest of justice will best be served by affording plaintiff an opportunity to prove its case at trial."

Taking the opinions in reverse order, we conclude that the "unusual nature of the circumstances" in *Glo Company* are not present here. There is in this suit however, "no dispute that an amount of money is owed to plaintiff." As noted above TB&C admitted in its amended answer that it had not paid plaintiff for services rendered after February 25, 1964. TB&C has often renewed its promise to pay plaintiff upon receipt of a bill (see appellee's brief, p. 26) and has paid $6,000.00 on account. We will sustain the Order of Dismissal entered by the District Court below. The case insofar as it relates to any claims prior to February 25, 1964 is thus stricken from the docket.

At the same time we will allow appellant to pursue his claim for services admittedly rendered to appellee after February 25, 1964. The District Court is directed to limit its inquiry and any award which it might make to services actually performed by appellant for appellee after February 25, 1964.

The case is remanded to the District Court with instructions to modify its Order of Dismissal and to proceed as to the admitted claim in accordance with this Opinion.